IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, | * |
| v. | * Criminal No. SAG-04-004 |
| DANTE FAULKNER, | * |
| Defendant. | * |

## MEMORANDUM OPINION

Dante Faulkner, who is presently in Bureau of Prisons custody at FCI Cumberland, has filed a Motion for Imposition of a Reduced Sentence Pursuant to Section 404 of the First Step Act. ECF 331. The Government filed an opposition, ECF 341, and Faulkner has replied, ECF 346. For the reasons that follow, Faulkner's Motion is GRANTED and his term of imprisonment in this case will be reduced to 196 months' imprisonment on Count One, plus 120 months' consecutive imprisonment on Count Twenty.

### I. Factual Background

The following facts are derived from the statement of facts in support of Faulkner's plea agreement. ECF 108. Between early 1996 and February, 2004, Faulkner participated in a conspiracy to distribute at least 30 kilograms of heroin, over 1.5 kilograms of cocaine base, and at least 50 kilograms of powder cocaine at drug shops located in the vicinity of the 2000 block of East North Avenue in Baltimore, Maryland. *Id.* The members of the narcotics distribution conspiracy, known as the North Avenue Boys ("NAB"), possessed and used firearms to protect their drugs and their cash proceeds. *Id.* The NAB maintained an ongoing dispute with a neighboring drug trafficking organization led by Charles Byers. *Id.* "In the course of this dispute,

the defendant and other NAB members used firearms to shoot members or persons believed to be members of the Byers group wherever they were encountered." *Id.* As examples,

- In another instance, on January 5, 2001, members of the North Avenue Boys, including the Defendant, Charles Laster, and Corey Grant, used two 9mm handguns and a .44 magnum revolver to kill Charles Williams, Byers' cousin and one of his workers, at the 1700 block of N. Chester Street.

- On February 18, 2001, NABs including the Defendant, London King and Gerald Faulkner (now deceased), used the same .44 caliber magnum used in the Williams shooting (as verified by police firearm examiners) in the fatal shooting of Dontae Edwards and Brandon Wilkens in the vicinity of 705 Exeter Hall, in Northern District. A government witness to these shootings would testify that these two victims were mistakenly believed to be associates of the Byers group.

- As described in Count Eighteen, on May 26, 2001, shortly after midnight, members of the conspiracy including the Defendant, Charles Laster and Ryan Ayres, retaliated for the shooting of two of their associates on North Avenue minutes before by using firearms to shoot and wound a Byers associate and a bystander at the 200 block of Caroline Street in the Douglas Homes.

- On May 28, 2001, in response to a shooting at a picnic by associates of the Byers group, Defendant and Charles Laster fired back with handguns. One of the handguns used in that shooting was later recovered at a residence associated with the Defendant.

On the first day of his scheduled jury trial, Faulkner pled guilty to two counts: conspiracy to distribute and possess with intent to distribute controlled dangerous substances, in violation of 21 U.S.C. § 846 (Count One), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Twenty). ECF 108. The plea agreement provided for an agreed sentence of 360 months as to Count One, followed by a consecutive sentence ranging from 60 to 120 months for Count Twenty. *Id.* At sentencing, United States District Judge J. Frederick Motz imposed a sentence of 316 months for Count One, representing a 360-month sentence minus 44 months Faulkner had spent in state custody, and a sentence at the high end of the agreed guidelines range, 120 months, for Count Twenty. Thus, the total sentence was 436 months in prison for this case, SAG-04-004.

Faulkner now seeks a reduction of his sentence to 196 months imprisonment on Count One, plus the consecutive 120-month sentence for Count Twenty, for a total sentence of 316 months.[1] That would represent a reduction of 120 months from his existing sentence.

## II. Analysis

### a. Faulkner's eligibility to move for relief under the First Step Act

Congress enacted the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (2010) ("FSA"), to remedy the inequality in mandatory minimum sentences between drug trafficking offenses involving crack cocaine and those involving powder cocaine. *See United States v. Gravatt*, 953 F.3d 258, 260 (4th Cir. 2020). In the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018), Congress made those changes retroactive, and permitted courts to reduce a defendant's sentence, upon the defendant's motion, where (1) the defendant was convicted of a "covered offense," namely a "violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the [FSA]"; (2) the offense was committed before August 3, 2010; and (3) the defendant did not already receive a reduction under the First Step Act. *See United States v. Robinson*, Cr. No. PJM-02-0227, 2019 WL 3867042 at *2 (D. Md. Aug. 15, 2019).

---

[1] According to records from in Case No. 05-147, immediately after their guilty pleas in Case No. 04-04, Faulkner and two of his co-defendants were placed in a holding cell in a detention facility with a witness who had been identified as an anticipated Government witness in their trial. *See* PSR for Dante Faulkner in Case No. 05-147, ¶¶ 10-11. Faulkner and his co-defendants confronted the witness, and then "assaulted the witness, knocked him to the floor, and punched and kicked him in the face, head and body until they were stopped by DOC personnel who observed the assault." *Id.* Faulkner and his co-defendants pled guilty to Retaliation against a Witness in violation of 18 U.S.C. § 1513(b)(1) and (c). *Id.* at 1. Faulkner received a consecutive 60-month sentence in that case, which he does not seek to reduce. Thus, if his requested reduction in this case is granted, he will serve a combined total of 376 months for both cases.

Clearly, Faulkner committed the drug trafficking offenses in question before August 3, 2010. He participated in a conspiracy distributing heroin, powder cocaine, and crack cocaine, with crack cocaine representing by far the lowest quantity of the three substances. However, as the Government somewhat begrudgingly concedes, the Fourth Circuit has explained that a multi-substance conviction still qualifies as a "covered offense" under the First Step Act, and poses no bar to a defendant's eligibility for a sentence reduction. *See United States v. Gravatt*, 953 F.3d 258 (4th Cir. 2020); *see also United States v. Wirsing*, 943 F.3d 175, 186 (4th Cir. 2019) ("All defendants who are serving sentences for violations of 21 U.S.C. § 841(b)(1)(A)(iii) and (B)(iii), and who are not excluded pursuant to the expressed limitations in Section 404(c) of the First Step Act, are eligible to move for relief under that Act."). The Fourth Circuit has found that because Congress did not intend to exclude defendants who committed acts involving different types of controlled dangerous substances from benefitting from the remedial goals of the First Step Act, *see Gravatt*, 953 F.3d at 264, it follows that "a defendant convicted of conspiracy to possess with intent to distribute crack cocaine and powder cocaine was convicted of a covered offense." *United States v. Byers*, 801 Fed. Appx. 134, 135 (4th Cir. 2020) (citing *Gravatt*, 953 F.3d at 263-64). Faulker is, therefore, eligible to move for relief under the First Step Act.

### b. Application of the First Step Act factors

Eligibility to move for relief, however, does not automatically equate to a sentence reduction, but simply affords Faulkner a review of the merits of his motion to determine whether the Court should exercise the discretion Congress afforded it to impose a lesser sentence.[2] *See Gravatt*, 953 F.3d at 262.

---

[2] This Court agrees with Faulkner that his motion does not seek recalculation of time credits. Thus, it will not address those issues further.

18 U.S.C. § 3553(a) prescribes the factors the Court must consider in determining whether it should reduce a defendant's sentence under Sections 404(b) and 404(c) of the First Step Act. *See Wirsing*, 943 F.3d at 183; *United States v. Logan*, Cr. No. CCB-10-0203, 2019 WL 3391618 *1 (D. Md. July 26, 2019). Those factors are (1) "the nature and circumstances of the offense;" (2) "the history and characteristics of the defendant;" (3) "the need to protect the public from further crimes of the defendant;" and (4) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a). The Court may also consider the defendant's conduct since his conviction. *See Logan* at *1; *Robinson* at *5.

Beginning with the first factor, the nature and circumstances of his offense, Faulkner acknowledged being participation in a conspiracy that distributed a large quantity of drugs—50 kilograms of powder cocaine and 30 kilograms of heroin, in addition to 1.5 kilograms of crack cocaine. As the Government notes, the North Avenue Boys were a particularly violent organization, and Faulkner himself participated extensively in the violence, including multiple shootings and murders.

Faulkner concedes the seriousness of his offenses, but argues that the reduced sentence he proposes, which is a total of 376 months in aggregate for his two federal cases in addition to the 44 months he already served in state custody, suffices under the § 3553(a) factors. *See Dean v. United States*, 137 S. Ct. 1170, 1175 (2017) ("[T]he 3553(a) factors are used to set both the length of separate prison terms and an aggregate prison term comprising separate sentences for multiple counts of conviction."). He further acknowledges that the sentence he is requesting for Count One varies well below the advisory guideline range, which is 360 months to life. Overall, then, the nature and circumstances of the offenses weigh against a reduced sentence.

Faulkner asks the Court instead to focus on the second factor, his history and characteristics, and especially his behavior during his incarceration, contending that his "commendable record in custody demonstrates that he does not pose a danger to the community at this stage of life." ECF 331 at 5. The Court recognizes Faulkner's accomplishments during his term of imprisonment, and the support from his family and friends expressed in their letters attached to his motion. ECF 331-4; 331-5; 331-6; 331-7; 331-8. In fact, Faulkner's support system includes multiple persons who have rehabilitated themselves and lead law-abiding lives after serving federal sentences, which will be exceptionally helpful to Faulkner upon his eventual release. Faulkner's disciplinary record while in prison has been fairly good. Despite the seriousness of his counts of conviction, he is currently incarcerated in, and working at, FCI Cumberland, a medium security facility. He has just two sanctioned incidents despite being in BOP custody since 2004: a 2020 incident involving possession of drugs or alcohol and a 2016 incident involving both use of drugs or alcohol and fighting with another person. While those infractions are serious and somewhat recent, their nature and overall infrequency does not suggest that Faulkner would pose a significant continuing danger to the public upon release. Ultimately, then, the Court views the history and characteristics of the defendant as a factor supporting a sentence reduction.

As to the third factor, the need to protect the public from further crimes of the defendant, the Court would certainly hope that it could rely upon Faulkner's representation that he intends to be law-abiding in the future, with the support of his friends and family. However, his relatively recent disciplinary infraction suggests that there may be some continued need to protect the public from his conduct. To the extent Faulkner were to possess drugs and alcohol in violation of release

conditions in the future, that can be addressed through a violation hearing.  Ultimately, this Court deems the third factor to be neutral.

The final § 3553(a) factor is the need to avoid unwarranted sentence disparities.  The most apt comparators are Faulkner's co-conspirators in Case No. 04-04, each of whom received a sentence of at least 240 months imprisonment for his conduct in the violent drug conspiracy.  *See, e.g.*, ECF 246 (Sean Henry's sentence of 246 months, to which an additional 87 month sentence was added for conviction in JFM-05-147, for a total of 333 months); ECF 129 (Ryan Ayres's sentence of 300 months); ECF 131 (Tyrell Fields's sentence of 300 months, to which an additional 60 month sentence was added for conviction in JFM-05-147); ECF 150 (Corey Grant's sentence of 240 months); ECF 159 (London King's sentence of 264 months); ECF 179 (Charles Laster's sentence of 240 months).  It is true that the co-conspirators pled guilty to different counts of conviction in constructing their individual plea agreements, so that the sentences imposed, while somewhat consistent in length, were not all calculated in the same way.  Regardless, Faulkner's original sentence of 496 months for the two cases dramatically exceeded the sentence of any of his co-defendants, despite the fact that several engaged in like conduct, including multiple violent acts.  Even Faulkner's proposed reduced sentence of 376 months (discounting the 44 additional months he served in state custody) exceeds his co-defendants' sentences by several years.  This discrepancy is unlikely to be attributable to Faulkner's criminal history at the time of his conviction given that he had only a single conviction at that time, which he sustained when he was 18 years old and which was deemed unrelated to the instant conspiracy such that it did not factor into his initial sentencing.

In total, then, even if the first § 3553(a) factor weights against a sentence reduction and the third is deemed neutral, the second and fourth factors weigh in favor of a reduction to Faulkner's sentence.

### c. Impact of the COVID-19 pandemic

In addition to the factors the Court considers in a standard § 3553(a) analysis, Faulkner contends that the Court should consider the effect of the COVID-19 pandemic on his incarceration. ECF 346 at 12. He describes more difficult conditions of incarceration during the pandemic. ECF 331 at 25.

This Court agrees with the other courts in this District that have found, in some circumstances, that the enhanced COVID-19 risks in an incarcerative setting may be a factor, but not a dispositive one, to consider in determining whether to grant a defendant's motion for reduced sentence. *See, e.g.*, *United States v. Dennis*, Cr. No. RDB-08-0012 (D. Md. May 1, 2020) (acknowledging COVID-19 as one relevant factor in evaluating a motion for a reduced sentence pursuant to Section 404 of the First Step Act); *United States v. Proctor*, Cr. No. DKC 04-160, 2020 WL 1864584 (D. Md. Apr. 14, 2020) ("The current pandemic state of emergency is of great concern to the entire country . . . Immediate release, however, is not a panacea . . . ."). The BOP's efforts to prevent transmission within its facilities clearly presented added hardships to the incarcerated population, as the BOP enacted dramatic measures to best protect and care for its inmates. *See United States v. Hiller*, Cr. No. ELH-18-389, 2020 WL 2041673 *3-4 (D. Md. Apr. 28, 2020). While this Court took these circumstances into account, they did not play a material role in the determination that a sentencing reduction is warranted.

### III. Conclusion

This Court is mindful of the Government's argument that the finality of sentences should be preserved. It recognizes, however, that there has been a significant shift in overall sentencing policies and practices over the last two decades. Faulkner's sentence not only exceeds that imposed on his co-defendants, but well exceeds that likely to be imposed on a similarly situated defendant today. Given that Congress has expressly authorized this Court to reconsider Faulkner's sentence, this Court does not believe it should be deterred by the general presumption in favor of sentencing finality from conducting the permitted First Step Act inquiry.

After considering all of the relevant factors, including the fact that Congress has deemed Faulkner eligible for sentencing recalculation under the First Step Act, this Court concludes that Faulkner's requested reduced sentence best comports with the objectives described in 18 U.S.C. § 3553(a). Accordingly, Faulkner's Motion for Imposition of a Reduced Sentence Pursuant to Section 404 of the First Step Act is GRANTED. His sentence on Count One will be reduced to 196 months, with a consecutive 120-month term for Count Twenty.

An Amended Judgment will ISSUE.

DATED: July 2, 2021                          /s/
                                                             Stephanie A. Gallagher
                                                             United States District Judge